836 F.2d 547
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Brenda STEWART, for Thomas Hubbard, Plaintiff-Appellee,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant-Appellee.
 No. 87-1585.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 5, 1987.
Decided Dec. 28, 1987.
 
 Douglas Lawrence Leppanen for appellant.
 Paul Steven Ceja, Assistant Regional Counsel, Office of General Counsel, Department of Health & Human Services (Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Supervisory Assistant, Regional Counsel, Michael W. Carey, United States Attorney, Gary E. Pullin, Assistant United States Attorney on brief) for appellee.
 Before SPROUSE and CHAPMAN, Circuit Judges, and TERRENCE WILLIAM BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Claimant, Brenda Stewart, on behalf of her son, Thomas Hubbard, appeals from a denial of Supplemental Security Income (SSI) benefits under the Social Security Act (SSA). This denial was based on a decision by the Administrative Law Judge (ALJ) which found that Hubbard had the significant impairment of grand mal epilepsy, but did not meet any of the impairments shown in the listing of impairments as set forth in the regulations at Appendix, Subpart P, Regulations No. 4. Stewart appealed from the final administrative decision to the Federal District Court for the Southern District of West Virginia. In that appeal, the United States Magistrate granted summary judgment for defendant Secretary, ruling that the decision of the ALJ was supported by substantial evidence. We agree and affirm.
 
 I.
 
 2
 Hubbard was born on July 10, 1983. The record indicates that he had been examined in April 1984, August 1984, and September, 1984 for epileptic seizures. Different physicians examined him on each occasion and concluded that he suffered from complex febrile (fever-related) associated seizures. Those physicians, however, concluded that the seizures were controlled with appropriate dosages of Phenobarbitol.
 
 
 3
 Stewart applied for SSI benefits on October 18, 1984, stating that her son had become disabled in January 1984 because of epilepsy. The claim was denied initially in November 1984. The Secretary based his decision on the finding that the medical evidence showed that Hubbard's seizures were controlled with medication and therefore his condition was not severe enough to be considered disabling.
 
 
 4
 Hubbard was again brought into the Charleston Area Medical Center ("the Center") on January 29, 1985 because of seizures. Hospital records noted a 101-degree fever, consistent with the prior diagnosis of complex febrile associated seizures. In a clinic report of the West Virginia Department of Human Services, Stewart stated that Hubbard's Phenobarbital dosages had been increased in February and that he had not had any seizures since that time.
 
 
 5
 A request for reconsideration of his claims for SSI disability benefits and a request for an administrative hearing before an ALJ were filed on May 1, 1985. On July 24, 1985, the ALJ conducted an administrative hearing, in which he listened to testimony primarily of Stewart. A Board-certified internist reviewed the medical records and stated that Hubbard had the significant impairments of grand mal epilepsy, but did not meet any of the impairments mandated under the regulations. Based in part upon this report, the ALJ found that there had been a seizure disorder, but that the disorder did not rise to the level of disability, impairment, or combination of impairment allowing disability benefits for Hubbard.
 
 
 6
 On April 15, 1986, a request for review of the ALJ's decision was denied, making the ALJ's decision the final decision of the Secretary. An appeal from the final administrative decision was taken to the Southern District of West Virginia. On August 12, 1986, the United States Magistrate granted summary judgment for the defendant Secretary. The Magistrate's decision was based primarily upon the following reasoning:
 
 
 7
 Before the Secretary can be required to consider the possible adverse effects of medication on the child's daily activities, it must first be shown that the child has experienced one major seizure in the year prior to application despite at least three months of prescribed treatment. The evidence in this case demonstrates that the child began taking Phenobarbitral on August 16, 1984, the application for benefits was filed on October 18, 1984, and the child experienced his last reported seizures on January 31, 1985. Therefore, the seizure, which occurred at least three months after prescribed treatment began, did not occur during the year prior to application, but instead occurred after application. Consequently, the initial requirement of Part B has not been met and this Court need not address the question of whether the child suffers from any adverse effects from the medication to control his seizures.
 
 
 8
 App. at 188 (emphasis in original) (citations omitted). Stewart appeals claiming that the Magistrate gave an overly strict reading of the regulatory requirements for SSI benefits and that both the ALJ and the Magistrate were in error in failing to consider the seizure of january 1985 in making their determination.
 
 II.
 
 9
 Major motor seizure disorders are compensible disabilities under the Social Security Act. Under 20 C.F.R. Prt. 404, Subpart P, App. 1, at 111.00A (1987), there must be some substantiation of seizure disorders. Further, under that regulation, such substantiation must be made for nonfebrile (non-fever related) periods. Section 111.00A mandates that in order for sections 111.02 and 111.03 to be utilized, the proof of seizures may not be limited to those occurring during febrile illnesses. The regulations define "major motor seizure disorder" in terms set forth as follows under 111.02:
 
 
 10
 A. Major motor seizures. In a child with an established seizure disorder, the occurrence of more than one major motor seizure per month despite at least three months of prescribed treatment. With:
 
 
 11
 1. Daytime episodes (loss of consciousness and convulsive seizures); or
 
 
 12
 2. Nocturnal episodes manifesting residuals which interfere with activity during the day.
 
 
 13
 B. Major motor seizures. In a child with an established seizure disorder, the occurrence of at least one major motor seizure in the year prior to application despite at least three months of the following:
 
 1. IQ of 69 or less; or
 
 14
 2. Significant interference with communication due to speech, hearing, or visual defect; or
 
 3. Significant emotional disorder; or
 
 15
 4. Where significant adverse effect of medication interfere with major daily activities.
 
 
 16
 Upon review of the evidence, we find that the final decision to deny benefits was correct. Under 111.02A, for a seizure disorder to amount to a disability under the SSA, a claimant must have more than one major motor seizure per month despite at least three months of prescribed treatment. The medical records clearly indicate that Hubbard did not qualify under this because his seizures were less frequent than one per month.
 
 
 17
 Subpart B of 111.02 presents alternate criteria for defining "major motor seizure disorder." A claimant qualifies under that part if he has at least one major motor seizure in the year prior to application despite prescribed treatment of three months. In addition, a claimant must establish a predicate symptom from a list of four possibilities. Appellant argues that the ALJ unduly emphasized the fact that the January seizure occurred after the application date, rather than prior to that date as mandated by the regulation. She further asserts that the child has been bumping his head and failing as a result of the medication, and therefore should qualify under Subpart B.
 
 
 18
 The decisions of the Secretary will be upheld if supported by substantial evidence. Estep v. Richardson, 459 F.2d 1015 (4th Cir.1972). However, we disagree with the failure to consider the January incident in determining qualification for SSI benefits. Stewart properly filed the instant claim in October 1984. The Secretary denied the claim and based his decision upon the medical evidence that showed that Hubbard's seizures were controlled with medication and therefore not severe enough to be considered disabling. Hubbard had another seizure in January 1985, and regardless of the occurrence of the seizure after application rather than before, as listed under Appendix 1, 111.02B this episode should have been considered.
 
 
 19
 However, even if the January seizure is considered for purposes of 111.02B, Hubbard must qualify under at least one of the four required symptoms of subpart B. It is apparent that there was sufficient evidence upon which the Secretary could find that appellant had not met any of these predicate qualifications. First, the claimant offered no proof that Hubbard had an IQ of 69 or less. Second, the report of Dr. Previll of the Center stated that Hubbard was "an active and happy alert baby." Also, the September 27, 1984 examination by Dr. Withrow of the West Virginia Department of Human Services revealed that Hubbard was well-developed. Consequently, there seems to be no "significant interference with communication due to speech, hearing, or visual defect." Third, there was no evidence of significant emotional disorder presented by the claimant. Last, the evidence before the ALJ was devoid of any support for a claim of side effects from medication other than Stewart's assertions.
 
 
 20
 Therefore, claimant having failed to demonstrate qualification under either 111.02A or 111.02B, we find that there was substantial evidence to support the Secretary's final decision, and the decision of the Magistrate is
 
 
 21
 AFFIRMED.